UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

GARY R.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

6:20-cv-1109-JR

OPINION AND ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits. The Commissioner's decision is reversed and remanded for further proceedings.

Plaintiff asserts disability beginning January 1, 2016, due to fibromyalgia, anxiety, post-traumatic stress disorder (PTSD), Asperger's syndrome, vertigo, right hand not working, and

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

concussions. Tr. 160, 218.  After a hearing held on April 24, 2019, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 31, 15-23.  Plaintiff contends the ALJ erred by: (1) rejecting plaintiff's symptom testimony; and (2) rejecting medical opinion.

A.     Plaintiff's Testimony

Plaintiff testified that due to vertigo spells occurring about five times a day, he could walk no more than a block before needing to stop.  Tr. 35, 37.  He also stated he is limited to lifting eight pounds due to his fibromyalgia.  Id. at 35.  Plaintiff further testified that due to anxiety he gets nauseated or serious heartburn when around people of authority.  Tr. 37.  Plaintiff indicated he is developing arthritis in his hands and can't grip well due to arthritis and fibromyalgia.  Tr. 40. Finally, plaintiff stated he has difficulty concentrating or remembering detailed instructions.  Id.

The Commissioner asserts the ALJ provided three clear and convincing reasons for rejecting plaintiff's symptom testimony to the extent it demonstrated an inability to work:  (1) plaintiff continued to work after his alleged onset date; (2) plaintiff stopped working for reasons unrelated to his impairments; and (3) plaintiff failed to seek or follow through with treatment that could improve his condition.

   1.     Post-Onset Work

As noted above, plaintiff asserts disability beginning January 1, 2016.  However, the ALJ noted plaintiff continued to engage in substantial gainful activity after his alleged onset date.  Tr. 21. The ALJ may discount a claimant's allegations of disabling limitations by contrasting that testimony with the claimant's continued work activity after his alleged onset date. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (noting that an ALJ may weigh inconsistencies between a claimant's testimony and his or her work activity); see also Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (finding that the ALJ

properly discounted a claimant's subjective allegations when she worked after her alleged onset date and continued to seek employment).

Plaintiff worked in auto parts delivery from September 2013 until March 2017. Tr. 210. Plaintiff then worked delivering pizzas until June 2017. Tr. 210. The ALJ noted that after the January 1, 2016 alleged onset, plaintiff's work qualified as substantial gainful activity between January 2016 and May 2016, and then again between July 2016 and September 2016. Tr. 17. Plaintiff has not engaged in substantial gainful activity since September 2016. Tr. 17. However, the ALJ specifically focused on a period of disability after September 2016. Tr. 17. It is unclear from the record whether the ALJ discounted plaintiff's allegations of disabling symptoms post-September 2016 based on work activity prior to this date.

Plaintiff testified he quit the pizza delivery job because he dropped pizzas as a result of poor walking abilities. Tr. 38. He also stated he can only drive about three miles before he gets sleepy, has trouble remembering things, and forgets delivery addresses. Tr. 38-39. Plaintiff further stated as of the date of the hearing he could not work full-time due to difficulty standing, problems with nausea, difficulty remembering things and the order in which they should be done, difficulty with grip, reduced strength, and lack of concentration. Tr. 39-41.

It is unclear from the record whether plaintiff's work activity after his alleged onset date is inconsistent with his allegations of disabling symptoms at least with respect to his ability to work after September 2016. Accordingly, it is unclear if substantial evidence in the record supports the ALJ's finding that plaintiff's work activity undermines his assertions of an inability to work.

    2.      Reasons Plaintiff Stopped Working

The ALJ's finding that plaintiff stopped working for reasons unrelated to his impairments dovetails with the finding that plaintiff continued to work after his alleged onset date. Such

evidence can provide clear and convincing evidence to reject disabling symptom testimony. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001), as amended (Nov. 9, 2001) (Claimant stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured).

Here, the ALJ specifically found "[t]he claimant acknowledged at the hearing that he left his job at an auto parts store because he moved away to care for his ill son - not due to any particular physical or mental deficits." Tr. 21. Although plaintiff did say he left the job because "he had to move [to Oregon]," tr. 38, he clarified that he also had "difficulty working with the other employees, where I was kind of like hostile or derogatory." Tr. 38. Plaintiff went on to note that he had to quit his pizza delivery job due to difficulties caused by his impairments. Tr. 38. Thus, plaintiff did indicate that specific physical and mental impairments also played in role in his decision to leave his auto parts job as well as subsequent employment. Accordingly, substantial evidence does not appear to support the ALJ's reasoning in this regard.

3. Treatment

The ALJ stated:

> The claimant's attitude toward vestibular rehabilitation is also inconsistent with a debilitating balance problem. He expressly declined the services on two occasions. He first expressed concern that the treatment would aggravate his fibromyalgia pain - even though the condition has not been documented during the period under review (See Ex. B9F, 19). He later declined his treatment provider's offer because of concerns about transportation - even being reminded that his insurance provider would cover transportation to and from appointments (See Ex. B9F, 24).

Tr. 21.

If an individual fails to follow prescribed treatment that might improve symptoms, an ALJ may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. 2017 WL 5180304 (Soc. Sec. Ruling 16-3p Titles II & Xvi:

Page 4 – OPINION AND ORDER

Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017)).  However, an ALJ may not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.  Id.  Ambiguous evidence triggers the ALJ's duty to conduct an appropriate inquiry to develop the record.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

      The ALJ's reliance on a lack of a fibromyalgia diagnosis to undermine plaintiff's reason for declining vestibular rehabilitation appears to be based on a failure to adequately develop the record.  The ALJ stated during the hearing that there is no actual evaluation within the period of time under consideration establishing fibromyalgia.  However, plaintiff's counsel indicated that there is mention in the record of a diagnosis in 2014 and that it was possible it was addressed at a prior disability hearing. The ALJ, however, simply stated there were no substantive findings in that prior case. Tr. 34.  This ambiguity triggered a duty by the ALJ to develop the record before making an adverse credibility determination regarding plaintiff's failure to follow treatment recommendations.

      In addition, even though insurance would cover transportation, the ALJ failed to consider plaintiff's reason for failing to go to treatment based on "transportation issues."  See Tr. 479. Moreover, the record indicates plaintiff has poor judgment and that his Asperger's diagnosis influences his behavior.  Tr. 348, 394.  Accordingly, before making an adverse credibility determination based on plaintiff's failure to go to rehabilitation, the ALJ should have developed the record to consider possible reasons for the failure.

Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence in the record to reject plaintiff's testimony of disabling symptoms, a remand is necessary to further develop the record.

B.     Medical Opinion

The ALJ found plaintiff capable of understanding, remembering, and carrying out no more than simple routine instructions with a Dictionary of Occupational Titles (D.O.T.) reasoning level of 2 or less.  Tr 19-20.

Dr. Susan South, Psy.D., did not conduct an exam but after reviewing the medical record, opined plaintiff is "is able to carry out simple routine instruction (1 - 2 steps). [Plaintiff] is not able to carry out more detailed instructions."  Tr. 61.  Dr. Ben Kessler, Psy.D. agreed after a similar records review.  Tr. 78.  The ALJ declined to adopt a limitation to 1-2 steps "as such a measure is not standardized and may well vary from employer to employer".  Tr. 21.  However, the D.O.T. provides the following:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002–03 (9th Cir. 2015).

There is an apparent conflict between performing one- and two-step tasks, and the demands of level two reasoning.  Id.  The Vocational Expert in this case identified level 2 jobs which the ALJ relied on in finding plaintiff not disabled.  Tr. 46-47.  Although the Commissioner asserts the ALJ appropriately rejected the opinions as vague, upon remand, the parties may further develop the record regarding the limitations contained in both Drs. South and Kessler's opinions.
.

C.      Remand

Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014).  Here, the record is uncertain as to the credibility of plaintiff's asserted limitations and the medical opinions of Drs. South and Kessler.  Accordingly, a remand is necessary to address these deficiencies.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further proceedings.

DATED this 20th day of July, 2021.

        /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge